UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>William Spencer and</u>
<u>Spencer Brothers LLC</u>

　　　v.　　　　　　　　　　　　　Civil No. 18-cv-1191-LM
　　　　　　　　　　　　　　　　 Opinion No. 2020 DNH 147
<u>Michael Doran, et al.</u>


**O R D E R**

Plaintiffs William Spencer ("William") and Spencer Brothers
LLC ("Spencer Brothers") filed a second amended complaint
bringing two claims against five current and former employees of
the New Hampshire State Police (collectively "the state
defendants"), three employees of the Federal Motor Carriers
Safety Administration ("FMCSA"), and two employees of the United
States Department of Transportation (collectively "the federal
defendants").  Plaintiffs bring substantive and procedural due
process claims under 42 U.S.C. § 1983 and a claim under the
civil remedy provision of the Racketeer Influenced and Corrupt
Organizations ("RICO") Act, 18 U.S.C. § 1964(c), each arising
from the circumstances of a traffic stop and subsequent
investigations of Spencer Brothers' business practices.  The
state and federal defendants move separately under Federal Rule
of Civil Procedure 12(b)(6) to dismiss the claims against them.
Doc. nos. 36 & 37.  In this order, the court will address the

motion to dismiss filed by the state defendants Michael Doran, William Burke, Kenneth Chaput, Steven Kace, and David Hilts.[1]

## STANDARD OF REVIEW

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (internal quotation marks omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

On a motion to dismiss, the court ordinarily must not consider any documents not attached to the complaint or not expressly incorporated therein.  See Ironshore Specialty Ins. Co. v. United States, 871 F.3d 131, 135 (1st Cir. 2017).  There are, however, narrow exceptions to this rule allowing the court to consider documents the authenticity of which is not disputed

---

[1] Plaintiffs concede that state defendant David Hilts should be dismissed from this action.  Doc. no. 44 at 15.  Accordingly, the court does not address any factual or legal allegations directed at defendant Hilts.

by the parties, official public records, documents central to
plaintiffs' claims, or documents sufficiently referred to in the
complaint.  Id.  The official public records exception includes
documents that the court could take judicial notice of under
Federal Rule of Evidence 201, such as records of administrative
decisions.  See Freeman v. Town of Hudson, 714 F.3d 29, 36-37
(1st Cir. 2013); O'Hara v. Diageo-Guinness, USA, Inc., 306 F.
Supp. 3d 441, 457 (D. Mass. 2018).

     In support of their objections to both motions, plaintiffs
submitted an administrative order issued by the Department of
Transportation.  Doc. nos. 43-1 & 44-1.  Similarly, the federal
defendants submitted in support of their motion to dismiss
certain administrative and judicial orders and pleadings filed
in those proceedings.  Doc. nos. 36-2 through 36-9.  Plaintiffs
do not object to the court's consideration of these materials or
contest their authenticity.  In fact, the second amended
complaint refers to and relies upon certain of the official
public records submitted by the federal defendants—namely an
out-of-service order issued by FMCSA.  See doc. no. 36-2 at 102-
04.  Accordingly, the court will consider the official public
records submitted in support of all parties' pleadings in
deciding the instant motion to dismiss.  But the court relies on
these official public records only to a limited extent: to
establish the existence of those administrative and judicial

proceedings and their legal effect.  See O'Hara, 306 F. Supp. 3d at 457.  The court does not, however, rely on the facts as recited in any of those orders, rulings, pleadings, or exhibits. See id.

**BACKGROUND**

I.   Factual Background

The following facts are drawn from the second amended complaint and from the existence of official public records attached to the parties' pleadings as explained above.  Spencer Brothers is a family-owned business located in Laconia, New Hampshire that removes, installs, cleans, transports, and properly disposes of cleaned and purged oil tanks and various other tanks.  Spencer Brothers employs William as its only driver.  William holds no ownership interest in the company.

On April 29, 2016, William was driving the company's truck. The truck held four tanks containing a small amount of rusty water, one properly cut, cleaned, and purged oil tank, one discarded oil-fired hot water tank, and five five-gallon pails. The truck did not contain hazardous materials.

New Hampshire State Police ("NHSP") Trooper Michael Doran effected a traffic stop of William's vehicle.  After examining his license and registration, Trooper Doran informed William in a hostile manner that he believed William was operating a

commercial motor vehicle.  William disagreed based on the weight of the truck.  William made a phone call to a state trooper he knew in an attempt to deescalate the situation.  In response, Trooper Doran told William not to make any more phone calls and threatened to arrest William and take away his commercial driver's license.

Trooper Doran then demanded that William open the rear door of the truck.  William complied and the trooper took photographs of the interior of the vehicle.  At some point during this interaction, Trooper Doran accused William of unlawfully transporting hazardous materials or "hazmat."  Ultimately, Trooper Doran informed William that the truck was ordered "out of service" and that it would be towed from the scene.  He also issued William a "fix-it" ticket requiring certain repairs to the truck.

William hired Extreme Auto to make the repairs necessitated by the "fix-it" ticket.  On May 13, 2016, Trooper Doran and Kenneth Chaput, another state employee, visited Extreme Auto to inspect the premises.[2]  Plaintiffs contend that, during this

---

[2] The second amended complaint alleges that Chaput is an individual employed by the NHSP.  Doc. no. 30 at ¶ 6.  It also alleges that Chaput was "misidentified" as a NHSP trooper and that "Chaput is an automotive equipment inspector with the [New Hampshire] Department of Safety."  Id. at ¶ 52.  In either case, the second amended complaint alleges that Chaput is a New Hampshire state employee.

inspection, Doran and Chaput damaged property at Extreme Auto and harassed its owner in an effort to harass and retaliate against plaintiffs.

Plaintiffs contend that this campaign of harassment continued when Trooper Doran requested that FMCSA investigate Spencer Brothers.  On June 13, 2016, FMCSA employees Douglas Wood and Christopher Gray inspected and photographed Spencer Brothers' business location in Laconia.  FMCSA agents also questioned Spencer Brothers' competitors and customers and informed them that Spencer Brothers was under investigation, thereby causing embarrassment and tarnishing its reputation in the business community.

Following the FMCSA agents' inspection of Spencer Brothers' property, one of the agents called NHSP Sergeant William Burke to report what they had found.  Sometime thereafter, Sergeant Burke filed a purportedly false report to the New Hampshire Department of Environmental Services ("NHDES").  He reported to NHDES that the Spencer Brothers' office smelled of petroleum and that the company was rinsing petroleum tanks in the garage and discharging the rinsate into a floor drain.  A NHDES employee subsequently inspected the Spencer Brothers premises and determined that Burke's complaints about Spencer Brothers were "unfounded."

Also as a result of the FMCSA inspection of Spencer Brothers' premises, on August 3, 2016, FMCSA sent Spencer Brothers a Proposed Safety Rating.  Doc. no. 44-1 at 2; see 49 C.F.R. § 385.11.  That Proposed Safety Rating notified Spencer Brothers that FMCSA intended to give it an "Unsatisfactory" safety rating, based on several alleged regulatory violations, including two violations related to hazardous materials.  On August 11, 2016, Spencer Brothers filed a petition for administrative review of the Proposed Safety Rating with the FMCSA that objected to the "Unsatisfactory" rating.  See 49 C.F.R. § 385.15.  On September 16, 2016, the FMCSA Assistant Administrator issued a final order denying Spencer Brothers' petition for administrative review of the Proposed Safety Rating.  As a result of this denial, the "Unsatisfactory" safety rating became effective on September 18, 2016, and resulted in an "out-of-service order" directing Spencer Brothers to cease operating any commercial motor vehicles in interstate or intrastate commerce.  Doc. no. 36-2 at 102-03.[3]  Spencer Brothers appealed FMCSA's assignment of the "Unsatisfactory" safety

---

[3] After FMCSA issued Spencer Brothers the Proposed Safety Rating but before the final order affirming the "Unsatisfactory" safety rating, FMCSA issued Spencer Brothers a Notice of Claim that initiated a separate civil penalty proceeding.  That Notice of Claim was premised on the same facts underlying the "Unsatisfactory" safety rating.  See 49 U.S.C. § 521(b); 49 C.F.R pt. 386.

rating to the United States Court of Appeals for the First Circuit, which dismissed the appeal on procedural grounds.  See doc. no. 36-9.

On November 2, 2016, William attended a hearing at the New Hampshire Department of Motor Vehicles regarding whether Spencer Brothers' state registration privileges should be suspended or revoked due to the FMCSA's out-of-service order.  Retired NHSP Trooper Stephen Kace represented the state at that hearing.

After the hearing, William was driving the company truck to a work appointment and noticed that he was being tailgated by a truck.  William eventually pulled off the road and the truck following him pulled over behind him.  Trooper Kace exited the truck and informed William that he was "under arrest for operating an 'out of service' vehicle."  Doc. no. 30 at ¶ 137. William explained to Trooper Kace that the truck he was operating was legal and not under an "out-of-service" order. William then left the scene.  Plaintiffs allege that Trooper Doran then pursued William in his police cruiser.

Throughout the course of the above-described events, William made numerous complaints to governmental agencies, requested investigations into alleged misconduct, and attempted to enlist the help of various governmental institutions to put an end to the alleged campaign of harassment.  For example, William initiated three complaints to the NHSP Internal Affairs

and Standards and Practices Department about Trooper Doran's conduct during the traffic stop and Sergeant Burke's alleged false report to NHDES.  The NHSP never interviewed William regarding these complaints and determined each complaint to be "unfounded."  William also sought help from the Federal Bureau of Investigation, Governor Sununu's Office of Citizen Services, and the New Hampshire Office of the Attorney General—all to no avail.

## II.  <u>Procedural Background</u>

Unsatisfied with the response to his complaints and requests for investigations into the alleged misconduct of state and federal employees, William filed this litigation pro se on behalf of himself and Spencer Brothers in December 2018.  The original complaint alleged 16 claims under 42 U.S.C. § 1983 against the NHSP and certain of its current and former employees, the New Hampshire Office of Attorney General and two of its employees, the FMCSA and three of its employees, and the United States Department of Transportation and two of its employees.  These claims arose from the same traffic stop and set of events that form the basis of the second amended complaint.

Under Local Rule 83.6(c), a corporation, unincorporated association, or trust may not appear in any action or proceeding

pro se.  LR 83.6(c).  Consequently, William moved to voluntarily dismiss without prejudice Spencer Brothers from the suit and the court granted that request.  Doc. nos. 13 & 14.

In response to the state defendants' first motion to dismiss, the court dismissed with prejudice the claims against the NHSP, the New Hampshire Office of the Attorney General and the individual state defendants in their official capacities on the basis of sovereign immunity.  Doc. no. 14 at 2-3, 6.  With respect to the claims against the individual state defendants in their individual capacities, the court dismissed those claims without prejudice and granted William leave to file an amended complaint.  Doc. no. 14 at 4-6.

William, still proceeding pro se, filed a first amended complaint.  The state defendants again moved to dismiss.  The court granted the state defendants' motion, concluding that the amended complaint failed to comply with the pleading requirements of Federal Rule of Civil Procedure 8(a).  Doc. no. 24.  The court dismissed the amended complaint without prejudice, affording William a "final chance to file a complaint that states a cognizable claim in compliance with Rule 8(a) and the court's rulings."  Doc. no. 24 at 6.

In September 2019, William and Spencer Brothers—by that time represented by counsel—filed the second amended complaint. Because it had retained counsel, Spencer Brothers sought to

rejoin the suit via the second amended complaint.  The court
held a telephone conference with counsel for all parties
regarding Spencer Brothers' reinstatement as a plaintiff.
Neither group of defendants objected to Spencer Brothers'
reinstatement and the court vacated the prior voluntary
dismissal.  Doc. no. 52.

The second amended complaint asserts two claims against all
defendants.  Count I of the second amended complaint alleges a
claim under 42 U.S.C. § 1983 that all defendants violated
plaintiffs' substantive and procedural due process rights under
the Fifth and Fourteenth Amendments to the United States
Constitution.  Count II alleges a civil RICO claim against all
defendants based on their alleged coordinated efforts to injure
plaintiffs' reputation and business due to a "personal vendetta"
against plaintiffs.  Doc. no. 30 at ¶ 189.


**DISCUSSION**

The state defendants move to dismiss the two counts
asserted against them under Federal Rule of Civil Procedure
12(b)(6), arguing that both counts fail to state a claim upon
which relief could be granted.  The court addresses each claim
below.

I.   <u>Count I: Substantive and Procedural Due Process Violations</u>[4]

Plaintiffs bring due process claims under 42 U.S.C. § 1983,
"which supplies a private right of action against a person who,
under color of state law, deprives another of rights secured by
the Constitution or by federal law." Mead v. Indep. Ass'n, 648
F.3d 226, 231 (1st Cir. 2012) (internal quotation marks
omitted).  "In order to make out a viable claim under § 1983, a
plaintiff must show both that the conduct complained of
transpired under color of state law and that a deprivation of
federally secured rights ensued." <u>Id.</u> (internal quotation marks
omitted).  There appears to be no dispute here that the state
defendants' alleged conduct was perpetrated under color of state
law.  The court therefore trains its focus on whether plaintiffs
have adequately alleged a deprivation of a federally secured
right.

Plaintiffs allege that the state defendants deprived them
of their substantive and procedural due process rights.  The
Fourteenth Amendment to the United States Constitution prohibits
a state from depriving any person of "life, liberty, or

---

[4] It is unclear from the drafting of Count I whether it is
asserted on behalf of only William or both William and Spencer
Brothers.  <u>Compare</u> doc. no. 30 at ¶ 176, <u>with</u> ¶ 179.  During a
telephone conference with counsel for all parties, plaintiffs'
counsel clarified that Count I is asserted on behalf of both
plaintiffs.  The court will therefore treat Count I as advanced
on behalf of both William and Spencer Brothers.

property, without due process of law."  U.S. Const. amend. XIV,
§ 1.  "The touchstone of this due process guarantee is the
protection of the individual against arbitrary action of
government."  Depoutot v. Raffaelly, 424 F.3d 112, 117 (1st Cir.
2005) (internal quotation marks omitted).  The Due Process
Clause has both substantive and procedural components.  Id. at
118.  The substantive due process guarantee "safeguards
individuals against certain offensive government action,
notwithstanding that facially fair procedures are used to
implement them."  Id.  The procedural aspect of the due process
guarantee "ensures that government, when dealing with private
persons, will use fair procedures."  Id.  The court will address
plaintiffs' substantive and procedural due process claims
separately.


A. Substantive Due Process Claim

To set out a substantive due process claim, a plaintiff
challenging specific acts of state officials must sufficiently
allege that: 1) the officials' "acts were so egregious as to
shock the conscience"; and (2) that the acts "deprived him of a
protected interest in life, liberty, or property."  Pagan v.
Calderon, 448 F.3d 16, 32 (1st Cir. 2006); see also DePoutot,
424 F.3d at 118.  The question whether "the challenged conduct
shocks the contemporary conscience is a threshold matter that

must be resolved before a constitutional right to be free from such conduct can be recognized." DePoutot, 424 F.3d at 118. The court will therefore first examine whether plaintiffs have adequately alleged conduct by the state defendants that was so egregious as to shock the conscience.

The First Circuit has described the conscience-shocking standard as "admittedly imprecise." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 880 (1st Cir. 2010) (internal quotation marks omitted). Nevertheless, the First Circuit has established certain guideposts to direct the analysis. See id. at 880-81. On one end of the spectrum, it is well established that "negligence, without more, is simply insufficient to meet the conscience-shocking standard." Id. at 881 (internal quotation marks omitted). On the other end, allegations that state officials had "an intent to injure in some way unjustifiable by any government interest is likely sufficient" to meet the conscience-shocking threshold. Id. (internal quotation marks and brackets omitted). Between these two poles are cases that present "closer calls." Id. (internal quotation marks omitted).

Ultimately, determining whether official conduct is conscience-shocking is necessarily a fact-specific inquiry that must be considered in the unique context and circumstances in which the conduct occurred. Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 623 (1st Cir. 2000); see also Gonzalez-Fuentes, 607

14

F.3d at 881.  Though a highly fact-specific inquiry, the shocks-the-conscience threshold is necessarily a "high one," to prevent the Constitution from being demoted to a "font of tort law." Drake v. Town of New Bos., No. 16-CV-470-SM, 2017 WL 2455045, at *13 (D.N.H. June 6, 2017) (quoting County of Sacremento v. Lewis, 523 U.S. 833, 847 n.8 (1998)).

Although each case must be judged on its own facts, examples of successful substantive due process claims are informative.  The First Circuit has collected representative cases in which plaintiffs established a viable substantive due process claim:

> Among the cases in which plaintiffs have prevailed are those involving a student blinded in one eye when a coach intentionally struck him in the head with a metal weight; a teacher's fabrication of sexual abuse charges against a father, resulting in loss of contact with his child for three years; rape by a police officer in connection with a car stop; a 57-day unlawful detention in the face of repeated requests for release, police officers aiding a third-party in shooting the plaintiff; an intentional assault by a police officer who struck a pretrial detainee twice in the head and threatened to kill him; and a principal forcing his way into a room where a student was hiding, grabbing her from the floor, throwing her against the wall, and slapping her.

Cummings v. McIntire, 271 F.3d 341, 346 (1st Cir. 2001) (citations and footnote omitted); see also Harrington v. Almy, 977 F.2d 37, 44 (1st Cir. 1992) (concluding plaintiff's substantive due process claim survived summary judgment where he claimed that defendants violated his rights by conditioning his

15

reinstatement as a police officer on his submission to a
psychological test in which he would have a gauge strapped to
his genitalia to monitor sexual arousal).  As illustrated by the
above examples, official conduct is more likely to meet the
"conscience-shocking" threshold if it involves highly physically
intrusive conduct, use of physical force or violence, or
interference with a protected relationship (e.g., a parent-child
relationship).  See Cruz-Ezaro, 212 F.3d at 622, 624; Pratt v.
Town of Windham, No. CIV 03-321-JD, 2004 WL 4957134, at *3
(D.N.H. Oct. 13, 2004).

Accepting plaintiffs' allegations as true and drawing all
inferences in their favor, the state defendants' alleged
misconduct here does not involve any threats of harm or
violence, use of physical force, or interference with a
protected relationship that would rise to the level of
conscience-shocking behavior.  Plaintiffs allege a campaign of
harassment whereby Troopers Doran and Kace unlawfully stopped
William, treated him in a hostile manner, accused him of
unlawful activity, and threatened his arrest and suspension of
his commercial driver's license.  The state defendants allegedly
devised this harassment to undermine Spencer Brothers' ability
to operate and to sully its reputation.  Further, the state
defendants made false reports to state and federal
administrative bodies to interfere with Spencer Brothers'

16

operations and harm its reputation.  Sergeant Burke made a false report to NHDES which painted Spencer Brothers in a negative light.  And Trooper Doran allegedly trumped up a claim that William was unlawfully transporting hazmat and reported that to FMCSA, which ultimately resulted in a federal inspection of the premises and an out-of-service order.  Drawing all inferences in plaintiffs' favor, these allegations paint a picture of deliberate misuse of official authority through verbal bullying, false claims, and false reporting to harass and intimidate William and cause economic and reputational harm to Spencer Brothers.

The First Circuit has expressly left open the question whether verbal harassment and intimidation as alleged in this case might, under appropriate circumstances, violate the substantive due process guarantee.  See Cruz-Ezaro, 212 F.3d at 622, 624.  But, here, plaintiffs' allegations fail to even rise to the level of verbal harassment and intimidation that the First Circuit has held does not meet the conscience-shocking threshold.

In Cruz-Erazo, the First Circuit held that plaintiffs' allegations of months of police harassment and intimidation did not rise to the shocks-the-conscience level and therefore the district court did not err when it concluded that plaintiffs failed to state a valid claim under § 1983.  See Cruz-Erazo, 212

17

F.3d at 623-24.  In that case, one of the defendant police officers began unlawfully occupying plaintiffs' second home. Id. at 618.  When plaintiffs attempted to enlist law enforcement to help remove defendant from the property, the officers were unwilling to help because the complaint was against a fellow officer.  Id.  Officers later insisted that the home actually belonged to their fellow officer, not plaintiffs.  Id. at 619. Plaintiffs took matters into their own hands by changing the locks at the property.  Id.  Subsequently, one of the plaintiffs, Cruz-Ezaro, was charged with disturbing the peace and burglary for entering her own property.  Id.  Defendant police officers testified falsely against Cruz-Ezaro, leading to her arrest on the burglary charge.  Id. at 620.  Plaintiffs also experienced continuing harassment over a period of months, including threatening phone calls and police cars driving by their home every night.  Id. at 619-20.

If the deliberate campaign of harassment and use of false testimony to fabricate criminal charges against plaintiffs in Cruz-Ezaro does not reach the shocks-the-conscience threshold, plaintiffs' allegations here must fall short.  See also Frei v. Town Of Holland, 212 F. App'x 4, 6 (1st Cir. 2007) (allegations that defendants committed perjury, falsified documents, and engaged in retaliatory action against plaintiff insufficient to establish substantive due process claim); Michel v. Town of

18

Hampden, No. 10-CV-30213-MAP, 2012 WL 893740, at *2 (D. Mass. Mar. 14, 2012) (plaintiff failed to meet shocks-the-conscience standard with allegations that local police maliciously procured arrest warrant, exaggerated situation to state police, illegally searched plaintiff's home, prosecuted him based on false evidence, and made defamatory statements about him in the media).

If true, plaintiffs' allegations describe official misconduct that is deplorable and inexcusable.  That does not, however, necessarily raise it to the level of conscience-shocking required to make out a substantive due process claim. See Cruz-Erazo, 212 F.3d at 618 (describing defendants' alleged conduct as "disgraceful" but concluding it did not sufficiently "shock the conscience" to establish a substantive due process claim).  Because plaintiffs have failed to sufficiently allege conduct by the state defendants that meets the shocks-the-conscience threshold, the court concludes that the second amended complaint does not state a viable substantive due process claim against any of the state defendants.  See DePoutot, 424 F.3d at 118, 122.

### B. Procedural Due Process Claim

Plaintiffs also claim that the state defendants violated the procedural component of the Fourteenth Amendment's Due

19

Process Clause.  Under the Due Process Clause of the Fourteenth
Amendment, "certain substantive rights—life, liberty, and
property—cannot be deprived except pursuant to constitutionally
adequate procedures." Garcia-Gonzalez v. Puig-Morales, 761 F.3d
81, 88 (1st Cir. 2014) (internal quotation marks omitted).  In
order to properly plead a procedural due process violation, a
plaintiff must allege: (1) a protected liberty or property
interest; and (2) that the defendants, while acting under color
of state law, deprived him of that interest without
constitutionally adequate process.  Id.; see also Rocket
Learning, Inc. v. Rivera-Sanchez, 715 F.3d 1, 11 (1st Cir.
2013).

　　　The second amended complaint alleges that the state
defendants deprived plaintiffs of their property and their
liberty interest in their right to pursue their chosen
profession.[5]  Specifically, plaintiffs explain in their objection
to the motion to dismiss that they were deprived of these

---

[5] To the extent plaintiffs also intend to allege a
deprivation of William's liberty interest based on the state
defendants' alleged unlawful seizures of his person, that claim
is more properly analyzed under the framework of the Fourth
Amendment, not substantive due process.  See Albright v. Oliver,
510 U.S. 266, 273 (1994); Doyle v. Falmouth Police Dep't, No.
2:14-CV-259-JDL, 2015 WL 470715, at *5 (D. Me. Feb. 4, 2015).
Because plaintiffs have not alleged or developed argument in
support of such a Fourth Amendment violation, the court will not
address it.

liberty and property interests because the out-of-service order
caused Spencer Brothers to shut down and William to lose his
employment.  Though it is unclear from the pleadings, the court
will assume that "out-of-service order" refers both to Trooper
Doran's instruction to William on April 29, 2016, that the
company truck was ordered "out of service" and to FMCSA's
September 18, 2016 order that Spencer Brothers cease commercial
motor vehicle operations.  The court assumes without deciding
that the fact that the out-of-service orders terminated Spencer
Brothers' operations and William's employment is sufficient to
establish the deprivation of a protected liberty or property
interest.[6]  Even assuming that the second amended complaint

---

[6] Although the court assumes for the sake of argument that
plaintiffs have adequately alleged a deprivation of a protected
interest, the court makes two observations.  First, the
allegations that the out-of-service orders shut down Spencer
Brothers and put William out of work are found only in the
objection to the motion to dismiss; they are not included in the
second amended complaint.  Plaintiffs cannot amend the second
amended complaint with facts raised only in their objection to
the motion to dismiss.  See Cass v. Airgas USA, LLC, No. 17-CV-
313-JD, 2018 WL 3682491, at *8 n.8 (D.N.H. Aug. 2, 2018).
Second, the facts as alleged in the second amended complaint
belie plaintiffs' contention that the out-of-service orders
halted Spencer Brothers' operations and William's employment.
The second amended complaint contains multiple factual
allegations indicating that William was still employed by
Spencer Brothers and still conducting work on behalf of the
company following both out-of-service orders.  See, e.g., doc.
no. 30 at ¶ 76 (on June 13, 2016, William was "away on a
jobsite" when FMCSA agents called him to attend a meeting at the
company premises), at ¶¶ 134-135 (on November 2, 2016, William
was "travel[ing] toward his afternoon job appointment" when
Trooper Kace began tailgating him), at ¶¶ 172(b)-(c) (in August

sufficiently alleges the deprivation of liberty and property interests occasioned by the out-of-service orders, it is devoid of allegations about what process plaintiffs were afforded before or after the out-of-service orders issued, the inadequacies of such process, and what process plaintiffs contend they should have received.

"The basic guarantee of procedural due process is that, before a significant deprivation of liberty or property takes place at the state's hands, the affected individual must be forewarned and afforded an opportunity to be heard at a meaningful time and in a meaningful manner." Gonzalez-Droz v. Gonzalez-Colon, 660 F.3d 1, 13 (1st Cir. 2011) (internal quotation marks omitted). It follows that, to establish the second prong of a procedural due process claim (that the deprivation occurred without constitutionally adequate process), plaintiffs must at least describe the process afforded to them in relation to the alleged deprivation, see Aponte-Torres v. Univ. Of Puerto Rico, 445 F.3d 50, 56 (1st Cir. 2006), and identify the failings of that process or describe the process that was due to them, see Doe by Fein v. D.C., 93 F.3d 861, 870 (D.C. Cir. 1996), so that the court can assess whether the process given accords with the due process guarantee. The court

---

and October 2018, William was stopped and questioned by NHSP troopers while driving the Spencer Brothers' company truck).

will examine plaintiffs' allegations (or lack thereof) regarding each of the two out-of-service orders below.

### i.    Trooper Doran's out-of-service order

The second amended complaint alleges that Trooper Doran informed William during the April 29, 2016 traffic stop that Spencer Brothers' truck was ordered "out of service" and that it would be towed from the scene.  There are, however, no allegations in the second amended complaint about what process plaintiffs were afforded before or after that deprivation, or what process should have been afforded to plaintiffs by Trooper Doran or the NHSP before or after Trooper Doran ordered the truck out of service.  Without any allegations as to what process occurred or was due, the second amended complaint fails to state a cognizable procedural due process violation on the basis of Trooper Doran's out-of-service order.  See Aponte-Torres, 445 F.3d at 56; Doyle v. Falmouth Police Dep't, No. 2:14-CV-259-JDL, 2015 WL 470715, at *5 (D. Me. Feb. 4, 2015) (granting motion to dismiss procedural due process claim because complaint was "entirely silent about any post-deprivation process available to him, or its inadequacy"); Johnson v. Town of Weare, No. 12-CV-032-SM, 2012 WL 2450599, at *8 (D.N.H. June 4, 2012), report and recommendation approved, 2012 WL 2428164 (D.N.H. June 27, 2012) (complaint failed to state procedural due

process claim when it did not allege what process plaintiff pursued after his truck was seized or whether such procedures were inadequate).

### ii.  FMCSA's out-of-service order

Next, plaintiffs contend that FMCSA's out-of-service order deprived them of property and liberty interests without due process.[7]  The second amended complaint lacks any allegations about what process plaintiffs were provided in relation to the FMCSA out-of-service order.  The official public records the parties submitted in support of their motion to dismiss pleadings, however, shed some light on this issue.  See doc. nos. 36-2, 36-9, & 44-1.

Those official public records reveal the following.  On August 3, 2016, FMCSA issued Spencer Brothers a Proposed Safety

---

[7] As an initial matter, plaintiffs have not developed an argument establishing the causal connection between any of the state defendants' conduct and the lack of adequate process afforded to them in relation to the out-of-service order issued by FMCSA.  See Manzini v. The Fla. Bar, 511 F. App'x 978, 982 (11th Cir. 2013) (to state claim for procedural due process violation, plaintiff must establish an "affirmative causal connection" between defendant's acts or omissions and the alleged constitutional deprivation); Reimer v. Smith, 663 F.2d 1316, 1322 (5th Cir. 1981) ("It is axiomatic that a plaintiff cannot succeed in a [section] 1983 action if he fails to demonstrate a causal connection between the state official's alleged wrongful action and his deprivation of life, liberty, or property.").  The court will assume for the sake of argument that plaintiffs have alleged a sufficient causal connection.

Rating indicating that it proposed to give Spencer Brothers an
"Unsatisfactory" safety rating for several alleged regulatory
violations involving transportation of hazardous materials.  On
August 11, 2016, Spencer Brothers filed a Petition for
Administrative Review of the Proposed Safety Rating, objecting
to the proposed "Unsatisfactory" rating.  FMSCA filed a
response.  Subsequently, on September 16, 2016, a FMCSA
Assistant Administrator issued a final order denying Spencer
Brothers' Petition for Administrative Review of the Proposed
Safety Rating, concluding that Spencer Brothers had not met its
burden of demonstrating that FMCSA had erred in assigning it an
"Unsatisfactory" safety rating.  Following that final order, on
September 18, 2016, FMSCA issued an order effective that day
that Spencer Brothers cease all transportation in interstate and
intrastate commerce, referred to herein as the "out-of-service
order."  Doc. no. 36-2 at 102.  Spencer Brothers then filed a
Petition for Review of that order with the United States Court
of Appeals for the First Circuit, which was ultimately
dismissed.

This procedural history demonstrates that plaintiffs were
afforded both notice of the proposed "Unsatisfactory" safety
rating and an opportunity to be heard by the FMCSA Assistant
Administrator prior to the effective date of the out-of-service
order.  The second amended complaint makes no allegations about

how those procedural safeguards were deficient.  Cf. Maldonado v. Municipality of Barceloneta, No. CV 07-1992 (JAG), 2009 WL 10704093, at *6 (D.P.R. Nov. 12, 2009) (finding plaintiffs adequately alleged procedural due process violation where complaint alleged that notice was given only five days prior to deprivation of property right and in a language most of them did not speak).  Furthermore, it appears that the process afforded to plaintiffs complied with applicable regulations.  See 49 C.F.R. § 385.11 (governing notification of safety fitness determination); 49 C.F.R. § 385.15 (outlining procedure for administrative review of proposed safety rating).

In their objection to the state defendants' motion to dismiss, plaintiffs argue that FMCSA's out-of-service order was issued "before and without a hearing."  Doc. no. 44 at 8.  But this allegation was not included in the second amended complaint.  As this court has reminded plaintiffs previously in this action, they cannot amend their second amended complaint through matters raised only in an objection to a motion to dismiss.  See Spencer v. N.H. State Police, Civ. No. 18-cv-1191-LM, 2019 WL 3284791, at *2 (D.N.H. July 22, 2019).  For all the reasons discussed above, the court concludes that plaintiffs have failed to state a viable procedural due process claim against any of the state defendants.

C. Impact of February 6, 2020, Department of
   Transportation Order

Plaintiffs argue that the recent DOT decision attached to their objection to the motion to dismiss somehow supports their procedural due process claim and demonstrates that they were entitled to a hearing before FMCSA issued the out-of-service order. Doc. no. 44-1. Plaintiffs' reliance on that order is misplaced.

The DOT order, served February 6, 2020, is entitled "Order Denying The FMCSA's Motion For Preclusion." The order explains that FMCSA has taken two separate administrative actions against Spencer Brothers: issuance of an "Unsatisfactory" safety rating resulting in the out-of-service order pursuant to 49 U.S.C. § 31144 and 49 C.F.R. part 385; and issuance of a Notice of Claim that commenced a civil penalty proceeding pursuant to 49 U.S.C. § 521(b) and 49 C.F.R part 386. Both of those administrative actions stem from the same facts: Spencer Brothers' alleged improper transportation of hazardous material at the time of Trooper Doran's traffic stop on April 29, 2016. In the February 6, 2020 order, the DOT Administrative Law Judge ("ALJ") confronted the question whether the FMCSA's "finding" in the safety rating proceeding that Spencer Brothers transported hazardous material on April 29, 2016, should have preclusive effect in the separate civil penalty proceeding that the ALJ was

presiding over.  In other words, the ALJ was asked to decide whether the doctrine of collateral estoppel applied to preclude Spencer Brothers from re-litigating whether it transported hazardous materials on the relevant date.

The ALJ concluded that FMCSA's "finding" during the safety rating proceeding that Spencer Brothers transported hazardous materials did not have preclusive effect in the separate civil penalty proceeding.  It therefore denied FMCSA's pending "Motion on Preclusion."  In practical terms, the ALJ's order means that Spencer Brothers is permitted in the ongoing civil penalty proceeding to litigate the factual issue of whether it improperly transported hazardous materials on April 29, 2016. Such litigation may occur at an evidentiary hearing during the course of the ongoing civil penalty proceeding to the extent permitted under the applicable regulations.  See 49 C.F.R §§ 386.16, 386.56.

The ALJ's order does not in any way opine about the constitutional adequacy of the procedures FMCSA afforded to plaintiffs in the separate safety rating proceeding culminating in the out-of-service order.  Nor does the order explicitly or implicitly find that plaintiffs were entitled to a hearing before FMCSA imposed the out-of-service order in the safety rating proceeding.  Thus, plaintiffs' reliance on DOT's February

6, 2020 order is misdirected; it lends no support to plaintiffs'
procedural due process claim.

    D. Summary

    As outlined above, the court concludes that plaintiffs have
failed to allege sufficient facts to state a cognizable claim
for violation of either of their substantive or procedural due
process rights.  The court therefore grants the state
defendants' motion to dismiss Count I.


II.  Count II: RICO Claim

    Plaintiffs allege a civil RICO claim, claiming that all
defendants were associated in some way as law enforcement
personnel and that, based on a "personal vendetta" against
plaintiffs, they coordinated their conduct to perpetuate
falsehoods about plaintiffs in order to harm their business and
reputation in the community.  See doc. no. 30 at ¶¶ 189, 194,
200-06.  The RICO civil remedy provision provides that "[a]ny
person injured in his business or property by reason of a
violation of section 1962 of this chapter may sue therefor in
any appropriate United States district court . . . ."  18 U.S.C.
§ 1964(c).  In order to set out a civil RICO claim, a plaintiff
must sufficiently allege: (1) that a violation of § 1962 has
occurred; (2) that he has been injured in his business or

property; and (3) that a causal nexus exists between the violation and his asserted injury.  See Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496-97 (1985); Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir. 1991).

Turning to the first prong of that test, plaintiffs allege that defendants engaged in conduct that violated § 1962(c). That provision makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  In order to plead a violation of § 1962(c), a plaintiff must sufficiently allege that the defendant: (1) conducted or participated in the conduct of; (2) an enterprise; (3) through a pattern; (4) of racketeering activity.  Sedmina, 473 U.S. at 496; 18 U.S.C. § 1962(c).

The state defendants argue that plaintiffs have failed to adequately allege elements two, three, and four of a § 1962(c) violation.  The court will assume without deciding that plaintiffs have sufficiently alleged the "enterprise" element of a § 1962(c) violation and therefore focus its analysis on elements three and four—the requirements that plaintiffs allege a pattern of racketeering activity.

The RICO statute defines "racketeering activity" as conduct
that violates any one of a number of specified federal laws,
such as the mail and wire fraud statutes.  18 U.S.C. § 1961(1);
Efron v. Embassy Suites (Puerto Rico), Inc., 223 F.3d 12, 15
(1st Cir. 2000).  A "pattern of racketeering activity" is
defined as "at least two acts of racketeering activity"
occurring within a 10-year period.  18 U.S.C. § 1961(5).  The
second amended complaint alleges two forms of racketeering
activity: obstruction of justice in violation of 18 U.S.C. §
1503; and mail fraud in violation of 18 U.S.C. § 1341.  Doc. no.
30 at ¶ 199.  The individual acts of racketeering activity, here
obstruction of justice and mail fraud, are often referred to as
the "predicate acts."  Micro-Med. Indus., Inc. v. Hatton, 607 F.
Supp. 931, 936 (D.P.R. 1985).  The court will evaluate whether
plaintiffs have sufficiently pled facts establishing two
predicate acts constituting a pattern of racketeering activity.


A. Obstruction of Justice

18 U.S.C. § 1503(a) makes it unlawful to endeavor to
influence, obstruct, or impede the due administration of justice
by intentionally influencing, intimidating, or impeding "any
grand or petit juror, or officer in or of any court of the
United States."  18 U.S.C. § 1503(a).  To constitute an offense
under this statute, the allegedly obstructive act "must relate

to a proceeding in a federal court of the United States."
O'Malley v. New York City Transit Auth., 896 F.2d 704, 707 (2d
Cir. 1990); see also Michaud v. Delkner, 2 F. App'x 51, 52 (1st
Cir. 2001) (citing O'Malley for same proposition); Michaud v.
Nadeau, 2 F. App'x 42, 44 (1st Cir. 2001) (same).  The
defendant's action must be taken "with an intent to influence
judicial or grand jury proceedings; it is not enough that there
be an intent to influence some ancillary proceeding, such as an
investigation independent of the court's or grand jury's
authority." United States v. Aguilar, 515 U.S. 593, 599 (1995).

Here, Count II does not specify which of the state
defendants' acts constitute obstruction of justice in violation
of § 1503, but rather states generally "[r]epresentative
predicate acts are pled throughout the complaint."  Doc. no. 30
at ¶ 198.  Cf. O'Malley, 896 F.2d at 707-08 (outlining four
specific acts plaintiffs alleged constituted predicate acts of
obstruction of justice).  Count II also vaguely refers to
falsehoods about plaintiffs' business practices that the state
defendants perpetuated through statements and testimony.  See
doc. no. 30 at ¶¶ 200-206.  Drawing all reasonable inferences in
plaintiffs' favor, the court construes the alleged obstructive
acts as any and all false testimony, reports, or statements the
state defendants made, including, but not limited to: Trooper
Doran's false statement to FMCSA about his findings during the

April 29, 2016, traffic stop; Sergeant Burke's false report to

NHDES; and Trooper Kace's statements made at the November 2016

administrative hearing.

Even drawing all inferences in plaintiff's favor, however,

the second amended complaint does not set forth any allegedly

obstructive act related "to a proceeding in a federal court of

the United States." O'Malley, 896 F.2d at 707.  Instead, most

of the state defendants' purportedly obstructive acts occurred

in state administrative proceedings or investigations.  See id.

(finding obstruction of justice predicate acts insufficiently

pled when all alleged conduct occurred in state courts or state

administrative proceedings.)

The only identifiable statement remotely related to a

federal proceeding is Trooper Doran's communication with FMCSA

that precipitated FMCSA's investigation of Spencer Brothers and,

eventually, the out-of-service order.  But that statement was

made in relation to a federal administrative investigation or

inspection, not a federal court proceeding, and therefore does

not fall within the scope of § 1503.  See Kimberlin v. Nat'l

Bloggers Club, No. GJH-13-3059, 2015 WL 1242763, at *5 (D. Md.

Mar. 17, 2015) (finding predicate act of obstruction of justice

insufficiently pled when plaintiff alleged defendants provided

false evidence to the FBI and state and local law enforcement

about plaintiff); cf. Lockheed Martin Corp. v. Boeing Co., 357

F. Supp. 2d 1350, 1375-76 (M.D. Fla. 2005) (finding predicate act of obstruction of justice adequately alleged when plaintiff claimed defendant gave false deposition testimony and false affidavit in ongoing federal litigation).  Thus, the second amended complaint fails to allege that any of the state defendants engaged in any conduct that would constitute a violation of § 1503 and qualify as a predicate act for plaintiffs' RICO claim.

   B. Mail Fraud

     Plaintiffs also allege that the state defendants engaged in the racketeering activity of mail fraud.  The mail fraud statute makes it unlawful to knowingly use interstate mail communications in furtherance of a scheme to defraud under false pretenses.  18 U.S.C. § 1341; United States v. Hebshie, 549 F.3d 30, 35 (1st Cir. 2008).  It is well established in the First Circuit that predicate acts of mail fraud in a civil RICO action must be pleaded with particularity in compliance with Federal Rule of Civil Procedure 9(b).  Cordero-Hernandez v. Hernandez-Ballesteros, 449 F.3d 240, 244 (1st Cir. 2006); Ahmed v. Rosenblatt, 118 F.3d 886, 889 (1st Cir. 1997); Birch St. Recovery Corp. v. Thomas, No. CV-99-571-B, 2000 WL 1513799, at *8 (D.N.H. July 29, 2000).  Specifically, under the First Circuit's interpretation of the Rule 9(b) particularity

requirement, the plaintiff must specify the time, place, and content of the allegedly false mail communications. See Ahmed, 118 F.3d at 889.

The second amended complaint falls well short of that standard. The only allegation in the complaint regarding mail communication is that defendants "acting in concert perpetuated several[] falsehoods through the mail and by testimony in order to . . . injure the Plaintiffs." Doc. no. 30 at ¶ 200. This allegation clearly fails to specify the time, place, or content of any alleged mail communications. In their objection to the motion to dismiss, plaintiffs try to fill in the gaps in the second amended complaint by asserting that defendants "necessarily" sent falsehoods in the mail due to the "nature of written statements and the overall process requiring paper filings that were not hand delivered between state lines." Doc. no. 44 at 14. There are, however, no facts alleged in the second amended complaint that give rise to an inference that defendants "necessarily" sent mail interstate, let alone specify the time, place, or content of that interstate mail communication. Because plaintiffs' allegations supporting the predicate act of mail fraud are not pleaded with particularity, the second amended complaint fails to state any predicate acts of mail fraud.

The court must go one step further, however, because the
First Circuit has placed a "special gloss" on the Rule 9(b)
particularity requirement in the RICO context.  Feinstein v.
Resolution Tr. Corp., 942 F.2d 34, 43 (1st Cir. 1991); see also
New England Data Servs., Inc. v. Becher, 829 F.2d 286, 290-92
(1st Cir. 1987).  When the court finds that the alleged
predicate acts of mail or wire fraud fail to meet the
particularity requirements, it "should make a second
determination as to whether further discovery is warranted and,
if so, the plaintiff should be provided with the opportunity to
amend the complaint after the completion of this discovery."
Ahmed, 118 F.3d at 890.  A plaintiff is not, however,
automatically entitled to such discovery and opportunity to
amend.  Id.  Indeed, dismissal should follow a failure to plead
mail fraud with particularity unless the plaintiff "suggests to
the district court, in a timely manner, that a limited period of
discovery will likely allow him to plug the holes in the
complaint and requests leave (i) to conduct discovery for this
limited purpose and (ii) thereafter to amend his complaint."
Feinstein, 942 F.2d at 44.

Plaintiffs have not made such an express request here.  In
their objection to the motion to dismiss, plaintiffs assert
generally that they "require discovery to provide a clearer
image of who sent these documents by mail and should proceed to

36

be able to investigate this issue further."  Doc. no. 44 at 14.
This assertion amounts to a general plea that the court allow
the second amended complaint to survive the motion to dismiss as
pleaded so that plaintiffs can move to the discovery phase of
litigation.  Plaintiffs have not asked for permission to conduct
discovery for the limited purpose of fleshing out the mail fraud
predicate acts.  Not only is plaintiffs' discovery request vague
and unsupported, it comes rather late in the game.  Plaintiffs
have now had two opportunities to amend the original complaint
to state viable claims.  And plaintiffs had the benefit of
counsel when they filed the current iteration of their claims in
the second amended complaint.  If plaintiffs determined that
they needed to conduct limited discovery to properly plead the
mail fraud predicate acts, they could have asked the court for
leave to conduct such limited discovery before filing the second
amended complaint.

    Additionally, based on the facts alleged in the second
amended complaint, there does not appear to be a strong
likelihood that discovery would uncover information enabling
plaintiffs to allege two interstate mail communications with
particularity.  The majority of the activity and conduct alleged
in the second amended complaint occurred in New Hampshire and
therefore involved intrastate communications.  See Cordero-
Hernandez, 449 F.3d at 247 (concluding that facts alleged did

not suggest that limited discovery would uncover interstate wire communications when all parties were based in same state at all relevant times).

The only allegation in the second amended complaint that is even close to raising the inference of interstate mail communication is the fact that federal defendant Todd Damiani of DOT's Massachusetts Office of Inspector General authored a report about Spencer Brothers.  See doc. no. 30 at ¶ 127.  However, plaintiffs did not plead, even on information and belief, that Damiani authored that report in Massachusetts and then mailed it to another state.  While information and belief pleading is not sufficient to meet the particularity requirement, such pleading would at least raise an inference that interstate communications might have occurred and that further discovery would illuminate the time, place, and content of the communications.  See Cordero-Hernandez, 449 F.3d at 247; see also Capozza Tile Co. v. Joy, No. 01-108-P-C, 2001 WL 1057682, at *6 (D. Me. Sept. 13, 2001) (finding wire fraud insufficiently pleaded and leave to take additional discovery unwarranted when complaint mentioned only a single fax).  Because there are no factual allegations that defendants utilized interstate mail communications and plaintiffs have not timely requested leave to conduct limited discovery and then amend the complaint to adequately plead predicate acts of mail

fraud, the court finds that limited discovery on this issue is not warranted.

As explained above, plaintiffs have failed adequately to plead any predicate acts of obstruction of justice or of mail fraud.  In other words, plaintiffs have failed to sufficiently plead even one single predicate act and have consequently failed to plead a pattern of racketeering activity.  "Failure to plead predicate acts adequately is enough to sink [a plaintiff's] RICO claim."  Ahmed, 118 F.3d at 889; see also Di Giambattisa v. McGovern, 974 F.2d 1329 (1st Cir. 1992).  The court therefore concludes that plaintiffs have failed to state a civil RICO claim against the state defendants upon which relief could be granted.  The court grants the state defendants' motion to dismiss Count II.

**CONCLUSION**

For the foregoing reasons, the court grants the state defendants' motion to dismiss all counts asserted against them (doc. no. 37).

SO ORDERED.

_____
Landya McCafferty
United States District Judge

August 20, 2020

cc:  Counsel of Record.